**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BEN L. HOPPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-07-804-RO |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Ben L. Hopper ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. Both parties to the proceeding have consented to the exercise of jurisdiction by a United States Magistrate Judge to order the entry of judgment. Upon review of the pleadings, the record ("Tr."), and the parties' briefs, it is the opinion of this court that the Commissioner's decision should be affirmed.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing his application seeking disability insurance benefits in August, 2004 [Tr. 43 - 45]. He alleged that degenerative bone disease and pain in his neck, shoulders, back, and legs resulted in disabling limitations as of March 11, 2004 [Tr. 24, 29, 43 and 80]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 24 - 27 and 29 - 31]; at Plaintiff's request an Administrative Law Judge ("ALJ") conducted a May 2006 hearing where Plaintiff, who was represented

by counsel, testified [Tr. 32 - 33 and 145 - 173]. In his October 2006 decision the ALJ found that Plaintiff retained the capacity to perform his past relevant work as it is generally performed and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 13 - 19]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 4 - 6], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. §404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff has preserved three claims of error on appeal. First, he maintains that the ALJ's credibility determination was contrary to law and not supported by substantial evidence. Next, Plaintiff contends that the ALJ erred, as a matter of law, in failing to properly evaluate the opinions of Plaintiff's treating physician. Finally, it is Plaintiff's claim that the ALJ's residual functional capacity[1] ("RFC") assessment was not supported by substantial evidence.

It is equally important in this case to consider what Plaintiff has *not* identified as error by the ALJ. Based upon Plaintiff's description of the nature of the work he last performed – as a maintenance man at a Christian boarding school [Tr. 167] – the ALJ

---

[1]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545 (a) (1).

found that Plaintiff's maintenance work was classified by the *Dictionary of Occupational Titles*[2] as work at the medium exertional level [Tr. 18]. Plaintiff has not challenged that finding on appeal. Moreover, at step four of the sequential process, the "claimant bears the burden of proving his inability to return to his particular former job and to his former occupation *as that occupation is generally performed throughout the national economy.*" *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (emphasis added). Here, while Plaintiff claimed that his maintenance work at Oklahoma Academy required "heavy work" [Tr. 152], the ALJ specifically determined that Plaintiff was able to perform the maintenance position "as generally performed in the national economy[,]" that is, at the medium exertional level [Tr. 18]. Thus, after finding that Plaintiff had the RFC to perform a full range of medium work [Tr. 16], the ALJ concluded that Plaintiff was not disabled based on the application of Social Security Ruling 82-61, 1982 WL 31387:

> Social Security Ruling 82-61 provides that an individual will be found "not disabled" when it is determined that he or she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job, *or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.*

[Tr. 18, emphasis added]. While Plaintiff has appealed the ALJ's finding that Plaintiff had the RFC to perform a full range of medium work, he has not challenged the remainder of the ALJ's findings at step four.

**Analysis**

---

[2]The *Dictionary of Occupational Titles* or "DOT" as published by the Department of Labor is one of several publications from which the Social Security Administration "will take administrative notice of reliable job information." 20 C.F.R. § 404.1566 (d) (1).

4

**Credibility**

While Plaintiff acknowledges that great deference is ordinarily given to an ALJ's assessment of credibility, he contends that the assessment in this case was reached in error:[3]

> In short, [Plaintiff] respectfully submits that the ALJ's rejection of his subjective allegations was legally and factually insufficient because the ALJ failed to discuss a good deal of evidence which supported his credibility under the legally relevant factors as part of his credibility analysis such that the ALJ's credibility determination was not "closely and affirmatively linked" to substantial evidence.

[Doc. No. 15, p. 14]. The specific evidence which Plaintiff asserts supported his credibility – evidence which he maintains was not discussed by the ALJ – will be addressed in the following review of the ALJ's credibility findings.

The ALJ began his credibility assessment with a summary of Plaintiff's testimony at the administrative hearing:

> The Administrative Law Judge has considered the claimant's statements concerning his impairments and their impact on his ability to work in light of the claimant's own description of his activities and lifestyle, the medical history, the degree of medical treatment required, the reports of the treating and examining practitioners, the findings made on examination, and his demeanor at the hearing. The claimant testified that he has a 9th grade education and a General Equivalency Diploma (GED). He testified that he repeated the 4th and 7th grades. He testified that he does not read well and is not very good at spelling. He testifies he can read the newspaper. He testified he has a driver's license. He testified he quit working his last job as a maintenance man due to degenerative joint disease. He stated his treating physician told him to quit working, but he cannot remember the doctor's name. It appears from the medical evidence of record that Dr. Neal

---

[3]"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "However, [f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quotation and internal quotation marks omitted).

> Nedley made this statement. The claimant stated he has discomfort in his wrists and hands and is unable to hold his wrists at an angle. He testified that sitting is his best position. The claimant testified that he has not filed for unemployment in the last 15 years. He testified that he tried to see the doctor but is unable to due to lack of funds. He testified that he would like to get x-rays or an MRI.

[Tr. 16].

Next, the ALJ recognized that objective medical evidence of record established that Plaintiff had pain-producing impairments [Tr. 16]. Then, as required, the ALJ proceeded to consider Plaintiff's allegations of disabling pain in order to "decide whether he believe[d them]. *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted). In assessing the credibility of Plaintiff's statements concerning his symptoms and their effects, the ALJ is directed both by Social Security ruling and regulation to consider:

(1) the objective medical evidence;

(2) Plaintiff's daily activities;

(3) the location, duration, frequency, and intensity of Plaintiff's pain;

(4) factors that precipitate and aggravate Plaintiff's symptoms;

(5) the type of any medication Plaintiff takes or has taken to alleviate the pain;

(6) any other treatment Plaintiff has received for relief of pain or other symptoms;

(7) any measures other than treatment Plaintiff has used to relieve pain, and,

(8) any other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling 96-7p, 1996 WL 374186, at *3; 20 C.F.R. § 404.1529 (c) (4).

In applying these factors the ALJ first reviewed the objective medical evidence,

finding that the "very little medical evidence of record" does not fully support Plaintiff's complaints [Tr. 16]. Plaintiff was seen by Dr. Neil Nedley on March 4, 2004, reporting lack of mobility in his neck along with some neck pain [Tr. 16 and 112]. Plaintiff also stated that he had seen a chiropractor who referred him to a physician who prescribed medications. *Id.* Plaintiff, who was seeing Dr. Nedley for another opinion, brought in x-rays and wondered whether he needed spinal manipulation. *Id.* Dr. Nedley's physical examination revealed that Plaintiff's neck was supple and nontender posteriorly [Tr. 17 and 113]; his impression was of neck pain that was probably due to degenerative changes and to Plaintiff's heavy physical work.[4] *Id.* Dr. Nedley "recommended rest or at least a decrease in his work activity" as well as continuing medications as needed [Tr. 113].

The ALJ further noted from progress notes dated July 28, 2004, that Plaintiff continued to complain of neck arthritis as well as bilateral shoulder arthritis, but that he had quit his job and was doing better now that he had been resting [Tr. 17 and 111]. Dr. Nedley – who noted that Plaintiff had been taking ibuprofen and Darvocet[5] – recommended work with "nonphysical labor" but stated that he could continue to have problems with arthritis. *Id.*

The ALJ then turned to the only other medical evidence of record, the report of Plaintiff's November, 4, 2004, consultative examination by Dennis Brennan, D.O. [Tr. 17], summarizing it as follows:

---

[4] Plaintiff testified that he had spent much of his adult life performing heavy labor, work which included thirty years with the Alaska Laborers Union [Tr. 150 - 152].

[5] According to information on the consumer Web portal of the Physicians Desk Reference, pdrhealth.com, Darvocet is a mild narcotic analgesic which is prescribed for the relief or mild to moderate pain.

> The claimant stated he did not have any complaints today. He stated he had no symptoms, but he could not work. He stated he had gone to a chiropractor who refused to treat him after x-raying his neck. He stated when he tried to work he seemed to "throw his neck out" and this caused nearly total disability due to discomfort. He stated his treating physician advised him to quit work and gave him medication. He was currently taking Ibuprofen. Review of systems indicated his neck was negative for stiffness and pain. . . . Range of motion of all major joints appeared physiologic and within normal limits. It is noted that during the interview the claimant was animated with both of his hands and he clasped his hands without effort.[6] Peripheral pulses were adequate in all four extremities. Neurological examination was entirely normal. The cervical, thoracic and lumbar spine revealed normal configuration and essential range of motion. He had normal hand skills. Posture was normal. Straight leg raising was negative bilaterally in the seated and supine positions. Toe and heel walking were normal bilaterally. He stated he was having no discomfort or complaints at this time. He ambulated with a stable and safe gait at an appropriate speed without the use of any assistive devices. Assessment was episodic neck pain, unclear etiology; and possible degenerative joint disease, undocumented or confirmed.

[Tr. 17, record reference omitted].

In addition to thoroughly considering the objective medical evidence – and finding that it does not fully support Plaintiff's subjective complaints [Tr. 16] – the ALJ considered other credibility factors including the fact that Plaintiff takes only over-the-counter mediation for his allegedly disabling pain [Tr. 17]. Plaintiff, while complaining that "the ALJ failed to discuss in his credibility analysis [Plaintiff's] previous use of narcotic pain and prescription anti-inflammatory medications, nor his chiropractic treatment[,]" concedes that the ALJ did, in fact, discuss this history in his summary of the medical evidence [Doc. No. 15, p. 13], a summary which was clearly a part of the credibility assessment [Tr. 16].

---

[6]Dr. Brennan reported as part of his physical findings that Plaintiff "refuses to shake hands on greeting stating that it hurts his hands." [Tr. 118].

With respect to other factors to be considered in determining whether he believed Plaintiff's claim of disabling pain, the ALJ – who had already observed that there was little medical evidence of record, *id.* – specifically found that Plaintiff "has not sought regular and ongoing treatment for his musculoskeletal problems as would be expected of someone with as severe and incapacitating pain as he alleges." [Tr. 17].  Plaintiff does not deny the accuracy of this statement but maintains that "the ALJ failed to discuss the fact that [Plaintiff] had been denied medical care due to his lack of insurance." [Doc. No. 15, p. 13].  Not only did the ALJ specifically state that Plaintiff "testified he has tried to see the doctor but is unable to due to lack of funds[,]" [Tr. 16], but he also noted that Plaintiff testified that the reason he wanted to see a doctor was to have an MRI or x-rays, *id.*; Plaintiff did not state that he was seeking *treatment* from a physician [Tr. 170 - 171].

The ALJ also considered Plaintiff's reported daily activities and found that they were not significantly limited:

> [Plaintiff] reported in a form submitted to the Social Security Administration that he gets up at 6:00 a.m., can do his personal care and dresses himself. He helps prepare breakfast and lunch. He takes care of his chickens. He does household chores and works in the yard and garden. He goes shopping. He drives his mother-in-law to the doctor and for treatment five days a week. He goes to church three times a week. He reads, watches TV and works on bicycles.

[Tr. 17 - 18, record reference omitted].  Plaintiff does not dispute that these are, in fact, activities in which he engaged on a daily basis.  Instead, he argues that the ALJ failed to discuss that Plaintiff "only spent about two hours a day doing work outside, that his activities varied depending on how he felt, or that he performed physical work slowly and in intervals[,]" [Doc. No. 15, p. 12] and that he had developed a tendency to watch

9

more movies and read more books. *Id.* [Tr. 84]. Plaintiff fails to explain, however, how such evidence undermines the ALJ's conclusion that Plaintiff's admitted level of daily activity belies the claim that Plaintiff is totally disabled due to pain.

With respect to the location, duration, frequency, and intensity of pain, the ALJ noted Plaintiff's testimony at the administrative hearing that he had discomfort in his wrists and hands[7] and that sitting is his best position [Tr. 16]. In connection with this credibility factor, Plaintiff maintains that "the ALJ never discussed [Plaintiff's] report that another physician besides Dr. Nedley had also instructed him to discontinue working due to his arthritis." [Doc. No. 15, pp. 12 - 13]. Although Plaintiff's testimony in this regard was far from clear, it does appear that Plaintiff referred at the hearing to another doctor – "at Kelly's Clinic on 23rd Street" [Tr. 153] – who told Plaintiff that he had arthritis and to quit working. Nonetheless, Plaintiff provided no records from such physician despite the fact that the ALJ left the record open to allow Plaintiff's lawyer to "follow up with Dr. Nedley *or anybody else who he can, to see what further information if any they're willing to give us."* [Doc. No. 171 (emphasis added)].

In addition, Plaintiff contends that "[t]he ALJ's credibility analysis also lacked any discussion of the fact that [Plaintiff's] three episodes of severe neck and shoulder pain lasted for several months" or that he had difficulty with reaching, squatting, kneeling, reaching or prolonged standing [Doc. No. 15, p. 13]. Plaintiff further maintains that the ALJ failed to mention that Plaintiff's condition improved only after he stopped working.

---

[7]As reported by the consultative examining physician, Plaintiff refused to shake hands with him, stating that it hurt his hands [Tr. 118]. The physician then observed Plaintiff, noting that he was animated with both of his hands and clasped his hands without effort [Tr. 17 and 119].

*Id.* Contrary to Plaintiff's argument, the ALJ specifically noted the treatment records by Dr. Nedley [Tr. 111] and Dr. Brennan [Tr. 117] reflecting Plaintiff's assertion that his condition improved only after he stopped working [Tr. 17]. Moreover, the ALJ concluded that Plaintiff was severely impaired by episodic neck pain [Tr. 15], and thus gave credence to his claim that he had suffered from three episodes of neck pain.[8] As to Plaintiff's alleged reaching difficulties, leg pain and pain on standing, the ALJ found that while Plaintiff complained of neck, shoulder and back pain, there had been no showing of nerve root compressions or radiculopathies nor had there been a loss of motion or of muscle strength; Plaintiff's gait remained normal and he was able to able to "heel and toe walk without a problem." [Tr. 17].[9]

The ALJ's credibility determination is legally sound and well-supported by substantial evidence of record.

**Treating Physician Opinion**

The ALJ made the following findings about the opinions rendered by Plaintiff's physician, Dr. Neal Nedley:

> Dr. Nedley, who treated the claimant in 2004, was of the opinion the claimant is disabled because of his arthritis. This opinion is not substantiated by clinical findings and is inconsistent with the other evidence of record. Also, whether the claimant has the capability to work is an opinion on an issue of disability reserved for the Commissioner (SSR

---

[8]It was during these episodes that Plaintiff alleged that he was unable to raise his arm above his head or to put on a T-shirt [Tr. 69 and 72]. According to Dr. Nedley's notes, the T-shirt dificulty occurred before Plaintiff quit his "hard physical labor." [Tr. 111].

[9]On September 20, 2004, Plaintiff reported that he had pain in his legs "but not enough to stop me from working." [Tr. 69]. Then, Plaintiff claimed that as of approximately October 15, 2004, less than a month later, "[m]y legs & back have gotten worse[;] I have a lot of pain in my legs[.]" [Tr. 80]. Several weeks later at his November 4, 2004, consultative examination, Plaintiff advised the physician that he had neither complaints nor symptoms but was unable to work. [Tr. 117].

11

> 96-5p).  While Dr. Nedley's opinion is probative, it is not determinative of the issue of disability.  Further, when the claimant's lawyer asked Dr. Nedley to provide an opinion on the claimant's remaining ability to perform work related activities, the doctor "refused to do so."

[Tr. 18, record references omitted].

Under the law of the Tenth Circuit, "[a]ccording to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004).  A sequential analysis must be undertaken by an ALJ when considering a treating source medical opinion which relates to the nature and severity of a claimant's impairments. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The first step, pursuant to Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2, is to determine whether the opinion is well-supported by medically acceptable techniques. *Watkins,* 350 F.3d at 1300.  At the second step, adjudicators are instructed that "[e]ven if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record."  SSR 96-2p, 1996 WL 374188, at *2.  If both of these factors are satisfied with regard to a medical opinion from a treating source, "the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion." *Id.*  If, on the other hand, "the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins,* 350 F.3d at 1300.

Once the ALJ determines that a treating source opinion is not entitled to controlling weight, he must consider the weight he does give to such opinion "using all

of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id*.  "Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* at 1300-1301. If he rejects the opinion completely, the ALJ must offer specific and legitimate reasons for so doing. *Id.*; SSR 96-2p, 1996 WL 374188, at *4; *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996).

Plaintiff has identified four specifics reasons for his claim that the ALJ committed reversible legal error in his application of the treating physician rule with respect to Dr. Nedley's opinions.  First, Plaintiff maintains that the ALJ failed to evaluate Dr. Nedley's statement that, "I basically instructed [Plaintiff] that he is going to have to consider a job that is nonphysical labor, and even then, he may end up having problems with his arthritis." [Tr. 111].    Plaintiff contends that "the ALJ focused his analysis solely on Dr. Nedley's opinion that [Plaintiff] was disabled[10] rather than also considering the fact that Dr. Nedley also restricted [Plaintiff] to 'nonphysical' work which did not include his past work (described by the ALJ as 'medium' in exertional level)". [Doc. No. 15, p. 16].  This reference to "nonphysical" work, according to Plaintiff, "could logically be read so as to limit [Plaintiff] to 'light' work, which would have precluded performance of his past

---

[10]Plaintiff acknowledges that Dr. Nedley's "opinion on the issue of disability . . . is reserved to the Commissioner." [Doc. No. 15, p. 17].

13

relevant work and could very likely have resulted in a finding of disability at step five (assuming he had no transferable skills)." *Id.* at 16 - 17.

The ALJ did not err in failing to treat Dr. Nedley's "nonphysical labor" [Tr. 111] reference as a medical opinion regarding Plaintiff's exertional capacity.  Under Social Security regulations, all work in the national economy requires some level of physical exertion. *See* 20 C.F.R. § 404.1567.  Thus, Dr. Nedley's statement that Plaintiff should "consider a job that is nonphysical labor" [Tr. 111] is tantamount to his opinion that Plaintiff is disabled, an opinion which Plaintiff acknowledges is reserved to the Commissioner.  Moreover, Plaintiff is only speculating about what Dr. Nedley meant by "nonphysical labor"  – an explanation Dr. Nedley declined to furnish through RFC assessment [Tr. 109] – and, consequently, has no substantive basis for arguing that a restriction by Dr. Nedley to nonphysical labor would necessarily restrict Plaintiff from performing medium work as a maintenance man. There is no basis for concluding that Dr. Nedley – who described Plaintiff's work as "hard physical labor" [Tr. 111] –  had any understanding of the functional demands of work as a maintenance man as that work is generally performed in the national economy, the appropriate gauge in this case [Tr. 18].

Next, Plaintiff challenges the ALJ's finding that Dr. Nedley's opinion is not substantiated by the clinical findings and is inconsistent with the other evidence of record on the grounds that it is not sufficiently specific to allow for meaningful judicial review [Doc. No. 15, p. 17].  Nonetheless, Plaintiff then proceeds to acknowledge that "the ALJ offered a summary of the limited medical evidence earlier in his decision,

including Dr. Nedley's findings of likely[11] degenerative changes, 'mild' cervical misalignment,[12] and mild carotid artery plaque buildup and Dr. Brennan's normal examination findings." *Id.*  The ALJ's report of Dr. Nedley's clinical findings – those cited by Plaintiff as well as Dr. Nedley's finding that Plaintiff's neck was nontender posteriorly [Tr. 113] – is sufficiently specific to allow meaningful review of the ALJ's finding that Dr. Nedley's opinion lacks substantiation by clinical findings.

With respect to the other aspect of the ALJ's finding – that Dr. Nedley's opinion that Plaintiff is disabled by arthritis is inconsistent with the other medical evidence of record – Plaintiff states that the ALJ only mentioned two of Plaintiff's three visits to Dr. Nedley [Doc. No. 15, p. 17].  The court's review of the ALL's decision, however, reveals a discussion of Plaintiff's initial examination on March 1, 2004 [Tr. 16 - 17 and 112 - 113], a reference to Plaintiff's April 12, 2004, appointment when Dr. Nedley reported the results of the March 4, 2004, bilateral carotid duplex scan [Tr. 17, 111 and 116] and, finally, a discussion of Plaintiff's last session with Dr. Nedley on July 28, 2004 [Tr. 17 and 111].  Plaintiff's final argument with regard to the other evidence of record – that another doctor had reportedly agreed with Dr. Nedley's opinion – was previously addressed in connection with Plaintiff's credibility assessment.  *Supra* at 10.  Despite having the opportunity to do so, Plaintiff failed to provide records from this other physician and, consequently, there were no evidence for the ALJ to discuss.  Contrary to Plaintiff's

---

[11]Dr. Nedley actually stated that Plaintiff's neck pain was "*probably* due to degenerative changes in his heavy physical work." [Tr. 113, emphasis added].  The ALJ, in turn, found that Plaintiff was severely impaired by "*possible* degenerative joint disease." [Tr. 15, emphasis added].

[12]Dr. Nedley's treatment note from Plaintiff's April 12, 2004, reflects that Plaintiff's neck did not seem to be misaligned [Tr. 111].

contention, the ALJ's decision adequately explained his conclusion that Dr. Nedley's opinions were not substantiated by clinical findings and were inconsistent with other evidence of record.

In his third contention with regard to the legal sufficiency of the ALJ's treating physician analysis, Plaintiff maintains that the ALJ erred because he "elected to give the opinions of [a] nonexamining state agency physician . . . greater weight than the opinions of Dr. Nedley[.]" [Doc. No. 15, p. 18].  In his reply brief, Plaintiff characterizes this argument as a challenge to the ALJ's failure to "explain why he adopted the opinions of a nonexamining state agency physician over those of Dr. Nedley." [Doc. No. 19, p. 5]. This is not the case; the ALJ's decision clearly explains his reasoning.  The ALJ rejected Dr. Nedley's disability opinion because it was "not substantiated by the clinical findings and is inconsistent with the other evidence of record" and because the issue of "whether the claimant has the capability to work is an opinion on an issue reserved for the Commissioner." [Tr. 18].  On the other hand, the ALJ gave "the opinions of the State agency medical consultants great weight because these are well supported by medically acceptable clinical and laboratory findings,[13] and are consistent with the record when viewed in its entirety." *Id.*  Thus, the ALL fully explained his rationale for purposes of subsequent review, and no legal error was committed.

Plaintiff maintains in his fourth and final treating physician argument that "the ALJ's reliance on Dr. Nedley's refusal to complete the RFC form submitted by [Plaintiff's] attorney" was not a legitimate rationale [Doc. No. 15, p. 18].  Plaintiff explains that,

---

[13]As Plaintiff suggests, it appears that the State agency physician's findings were based on what Plaintiff terms "Dr. Brennan's unremarkable one time examination." [Doc. 15, p. 18].  *See* Tr.at 124.

16

"[t]his is because it was unfair for the ALJ to penalize [Plaintiff] for his doctor's refusal to fill out a form without discussing the fact that Dr. Nedley's refusal was not based on [Plaintiff's] medical condition, but rather because of Dr. Nedley's desire not to get involved in what he believed to be a workers' compensation matter." *Id.* Plaintiff's argument is unavailing. The ALJ accurately quoted Plaintiff's counsel in stating that Dr. Nedley refused to provide an RFC assessment for his patient [Tr. 18 and 109]; as a consequence of Dr. Nedley's refusal, the ALJ had no RFC assessment from Plaintiff's treating physician upon which he could rely.[14] Nothing about Dr. Nedley's reasons for declining the request alters that fact.

Plaintiff has failed to establish that the ALJ's application of the treating physician rule was legally flawed.

**RFC Assessment**

Plaintiff's contention here is that the ALJ's RFC assessment was not supported by substantial evidence considering the record as a whole. Plaintiff's cursory argument simply summarizes the claim already presented – and rejected – by the court, that is, that the ALJ allegedly failed to properly evaluate medical opinions and other evidence which Plaintiff claims shows that he is unable to perform the exertional demands of medium work. No new claims are made, and no additional discussion is required.

One statement repeated by Plaintiff does merit repeated comment. Plaintiff asserts that two physicians indicated that Plaintiff "should no longer perform his past relevant

---

[14]As previously discussed, *supra* at 10, the ALJ specifically left the record open to allow Plaintiff to provide additional information from Dr. Nedley [Tr. 171 - 172]. Following Dr. Nedley's refusal to complete the RFC assessment, there is no indication that Plaintiff sought additional time within which to notify Dr. Nedley that this request did not relate to a workers' compensation matter.

'medium' work as a maintenance man." [Doc. No. 15, p. 19]. This is simply not the case. Dr. Nedley's notes, in fact, reflect his belief that Plaintiff was performing "hard physical labor" [Tr. 111]. There is no indication that Dr. Nedley – or the other physician whom Plaintiff claims he saw – had any awareness of the functional demands of a maintenance man as generally required by employers throughout the national economy [Tr. 18].

Plaintiff has failed to establish that the ALJ's RFC assessment lacks substantial evidentiary support.

**Conclusion**

The decision of the Commissioner is affirmed. Judgment will be entered accordingly.

IT IS SO ORDERED this 31st day of March, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE